## BROOKS *v.* BROOKS *et al.*

No. 12228. FEBRUARY 19, 1938.

*John I. Kelley* and *P. K. Burns,* for plaintiff in error.
*Roberts & Roberts,* contra.

GRICE, Justice. This is the third appearance of this controversy in our courts of review. For the other decisions see *Brooks*

v. *Brooks,* 54 *Ga. App.* 276 (187 S. E. 687), and *Brooks* v. *Brooks,* 184 *Ga.* 872 (193 S. E. 893). For convenience, the litigation which culminated in the decision reported in 54 *Ga. App.* will hereinafter be referred to as "Case No. 1;" the branch of the controversy which appears in 184 *Ga.* will be designated as "Case No. 2;" while the matters covered by the instant writ of error will be referred to as "Case No. 3."

Savannah Brooks died intestate, leaving four heirs, A. M. Brooks, Mary Brooks, Alice Brooks, and Helen Gross. Mary Brooks was appointed her administratrix. She owned, among other assets, four certificates of deposit in the Loganville Banking Company. One of these stood in the name of Savannah Brooks or Mary Brooks, a second was in the name of Savannah Brooks or Alice Brooks, a third had been originally issued in the name of Savannah Brooks or M. M. Brooks, but was later changed to Savannah Brooks or Mary Brooks or Alice Brooks; the fourth was in the name of Savannah Brooks or Mary Brooks as guardian of Helen Gross. Before Savannah Brooks's death the Loganville Banking Company went into liquidation, and certain of its assets were exchanged for the certificates. It follows that the persons in whom were the true titles to these certificates should have the assets they represent.

Case No. 1 originated in the ordinary's court on a citation for settlement brought by A. M. Brooks against Mary Brooks, the administratrix. C. L. Gross, as guardian of Helen Gross, joined in the citation. A judgment was entered, and from this an appeal was taken to the superior court by Mary Brooks, and in that court an investigation de novo was had before a jury. The main controversy there was whether the certificates of deposit belonged to the estate of Savannah Brooks. Mary, the administratrix, contended that they had been the subject-matter of gifts by Savannah Brooks to her daughters and granddaughter, and that consequently it was no part of her duty as administratrix to administer them. At the trial, specific questions were propounded to the jury, and the effect of their finding was that no gifts had taken place. A judgment followed, as of course, in favor of the heirs, for separate sums, against Mary Brooks, as administratrix. Mary Brooks moved for a new trial, and on this being refused she took the case to the Court of Appeals, presenting two main questions: (1) Had

the lower court erred in approving the verdict that no gift had taken place? (2) Had the court erred in holding that she, Mary, was not a competent witness to testify as to communications with her mother on the subject of the alleged gifts? The Court of Appeals decided that there had been no error of the lower court as to either point. In the case in the Court of Appeals, Mary Brooks as administratrix was the sole plaintiff in error. The defendants in error were A. M. Brooks and C. L. Gross, guardian.

Case No. 2 arose from an equitable petition filed by A. M. Brooks and C. L. Gross, as guardian. Process issued, directed to Mary Brooks, Mary Brooks as administratrix of Savannah Brooks, Alice Brooks, and several others. Many of the particulars involved in the equitable action are set out in 184 *Ga.*, and will not be repeated here. During the trial Mary Brooks again attempted to set up title in herself to her part of the certificates of deposit, asserting that a gift had occurred from Savannah Brooks to her. She was met by the bar of res judicata arising from the decision in Case No. 1. This bar was upheld (184 *Ga.* 872). Mary Brooks was the sole plaintiff in error in that case. Alice Brooks was one of the defendants in error. The extent of that decision is no further, therefore, than that as to Mary Brooks the question of title was res judicata.

Case No. 3, now before us, grew out of the same action in equity which was the basis of Case No. 2. The matter proceeded to a verdict and decree. A motion for new trial, based on the general grounds, was filed by "the defendants" without naming them. Alice Brooks, styling herself as "movant," afterward amended this motion, setting up two special grounds. The motion was overruled, and Alice Brooks brought the instant writ of error. She is the sole plaintiff in error here. A. M. Brooks and several others are designated as defendants in error, but Mary Brooks is not a party.

On the trial, in answer to specific questions, the jury decided (1) that Savannah Brooks did not give to Alice Brooks the interest in Mrs. Brooks's share of the assets remaining in the Loganville Bank, represented by the certificates payable to Alice Brooks, and a half interest represented by the two certificates payable jointly to Mary Brooks and Alice Brooks, and (2) that Mrs. Brooks had made no contract with Alice Brooks that said assets

were to be transferred to Alice Brooks as compensation for services rendered Mrs. Brooks by Alice. In an amendment to her motion for new trial Alice Brooks makes two points: (1) that the judge erred in holding that she was incompetent to testify that Savannah Brooks gave her the certificates, and (2) that the judge erred in holding Alice Brooks incompetent to testify as to communications with Savannah Brooks, as to the latter having given the certificates (or the assets represented by them) to Alice as compensation for services rendered.

We are of the opinion that the court below was right in holding Alice Brooks incompetent to testify as to the communications between her and Savannah Brooks, who was deceased. Mary Brooks as administratrix was originally a party to this equitable action. In the original petition it was stated in paragraph 1, "Mary Brooks is the duly qualified administratrix of the estate of Savannah Brooks," and this allegation was admitted in the answer filed by Alice Brooks. Relief was asked for against the administratrix, and it was prayed "that Mary Brooks, as administratrix of Savannah Brooks be served as a defendant in this proceeding." There was an order that the petition be served on the named defendants, and there was a return of service by the deputy sheriff as to seven of them, including Mary Brooks. We take it that all this was quite sufficient to bring the administratrix of Savannah Brooks before the court. It is true that both the administratrix and Alice Brooks were denominated defendants, and, as we understand the contention of counsel, it is that the two were not "opposite parties," within the meaning of the Code, § 38-1603. We can not agree to this contention. We think the Code section, in view of the underlying reason for its existence, must be held to embrace a situation such as is here presented, and should not be defeated by too narrow a construction of the phrase "opposite party." The application which in the instant case we give to the words "opposite party" finds support in the decisions of the courts of other jurisdictions. In Eslava v. Mazanga's admr., 8 Fed. Cases, 780, 781, it was held that a provision in a statute of the United States that in actions against executors, administrators, or guardians, neither party shall be allowed to testify against the other as to any transaction with the testator, intestate or ward, unless called to testify thereto by the opposite party, the "opposite party" meant

is that party against whom the evidence is sought to be used, and an intervenor whose interests are the same as that of the plaintiff is not an "opposite party" who may require the plaintiff to testify. Under a like statute of Tennessee it was decided that it is not necessary that a witness shall be the "opposite party" on the record in a case, in order to be incompetent if his interests are antagonistic to those of the personal representative against whom he is called. Hill *v.* McLean, 78 Tenn. (10 Lea) 107, 114; Trabue *v.* Turner, 57 Tenn. (10 Heisk.) 447, 454. Under a similar provision in the law of Alabama, it was ruled that the "opposite party" means the party whose rights would be affected by the testimony offered. Adversary parties do not necessarily mean "opposite parties" within the meaning of the statute, as to special issues which may be made and tried. Dolan *v.* Dolan, 89 Ala. 256 (7 So. 425). For other rulings of the same nature, see the authorities collected in 70 C. J. 229, 239.

We are not unmindful of the last sentence in that section of our Code which deals with the competency of witnesses, viz., "There shall be no other exception allowed under the foregoing paragraphs," nor of the settled rule of strict construction that has been applied to it. This court, however, in *Johnson* v. *Champion,* 88 *Ga.* 527 (15 S. E. 15), decided that a widow whose husband died intestate after the passage of the act of December 12, 1882 (Acts 1882-3, p. 47), leaving no lineal descendants, is, in the absence of evidence that he left debts which are still unpaid, entitled to his whole estate without taking out letters of administration thereon, and, being so entitled, that she is his personal representative; and that in a suit against her by one claiming to be a creditor of her husband, the plaintiff is not a competent witness to establish an alleged contract between himself and the deceased out of which the alleged indebtedness arose. In *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438), it was held that in an ejectment suit the opposite party to the grantee of a deed from a deceased person is not competent to testify in his behalf to conversations and transactions with such deceased person, affecting adversely the title conveyed by the deed; this court reaching the conclusion that such grantee in a deed to land was "assignee, or, transferee," as those words are used in the Code, § 38-1603. In *Kramer* v. *Spradlin,* 148 *Ga.* 805 (98 S. E. 487), it was ruled

that a legatee and a devisee are also assignees and transferees in contemplation of that act. In the opinion in the *Hendrick* case, supra, Mr. Justice Candler remarked: "The act of 1889 and the amending act of 1893 are both remedial statutes. The evil sought to be cured was that the living took advantage of the dead, the sane of the insane, by giving testimony the power to contradict which was buried in the tomb or obscured by dethroned reason." In *Cooper* v. *Reeves,* 161 *Ga.* 232 (131 S. E. 63), it was ruled that a petition filed by an administrator based upon the provisions of what is now Code § 37-404, praying for direction of the court in the distribution of the estate, was not a suit instituted or defended by the personal representative of a deceased person, in the sense in which the word "suit" is used in the applicable section of the Code.

These references are made to show that this court has applied the provisions of our evidence act to witnesses not covered by the rigid, technical classification used in the statute, even though these rulings may at a glance seem to extend or restrict the meaning of words and classes. A court should never by construction add to, take from, or vary the meaning of unambiguous words in a statute. But the difference between application and construction should be kept before us. Such a distinction Mr. Justice Field had in mind, when, in delivering the opinion of the Supreme Court of the United States in the case of United States v. Kirby, 74 U. S. 482, 486-7 (19 L. ed. 278), he said: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." We are merely deciding that the terms of the statute, rendering the witness incompetent, will be applied in the instant case.

The instant suit is an equity case. "In a chancery suit it is often possible properly to make a particular person either a plaintiff or defendant. Ordinarily under the flexible rules governing the giving of equitable relief, it may not make much difference whether he appears on one side or upon the other." Rose's Federal Jurisdiction and Procedure (3d ed.), § 369. See also 20 R. C. L.

§ 12. In Pomeroy's Equity Jurisdiction (4th ed.), § 114, speaking of equity, the author, after stating that "Its fundamental principle concerning parties is that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested, although indirectly, in the subject-matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit," adds: "and it is not ordinarily a matter of substantial importance whether they are joined as plaintiffs or defendants, although this question of procedure is regulated to a certain extent by rules based upon considerations of convenience rather than upon any essential requirements of the theory." Perhaps the most frequent instance of the court's shifting parties according to their actual interest in the controversy is in construing the second section of the Federal judiciary act of 1875, providing for removal of all suits of a civil nature from State to Federal courts, the rule being firmly established that the parties may be arranged with reference to the actual interest on opposite sides of the dispute. Simkins' A Federal Equity Suit (2d ed.), 65.

It is true that the administratrix and Alice Brooks were not "opposite parties" in the sense that one of them was a plaintiff and the other a defendant. But the interests of the administratrix as the representative of the estate, looking after the rights of the heirs as a class, and the interest of Alice Brooks as one of those heirs who claimed a sole interest in the certificates in exclusion of the others, were directly opposed. We think that, under the rather unusual facts of this case, they were "opposite parties" within the meaning of the Code.

But counsel says that Mary Brooks and the estate of Savannah Brooks had been eliminated, and the estate discharged. We find nothing in the record to this effect. The plaintiff below did not file any amendment dismissing the action as to the administratrix, nor have we seen any order of court to that effect. At the time of the trial, so far as we have been able to learn, Mary Brooks as administratrix was still a party of record to the cause. We conclude, that, within the meaning of the evidence act hereinbefore referred to, Alice Brooks and Mary Brooks as administratrix of the estate of Savannah Brooks, were opposite parties; and therefore it was

not error to exclude testimony of Alice Brooks as to transactions, communications, and conversations with Savannah Brooks.

*Judgment affirmed. All the Justices concur.*