64735. CLAYTON COUNTY BOARD OF TAX ASSESSORS v. CITY OF ATLANTA.
64736. CLAYTON COUNTY BOARD OF TAX ASSESSORS v. DOBBS-PASCHAL MIDFIELD CORPORATION.
64861. CITY OF ATLANTA v. CLAYTON COUNTY BOARD OF TAX ASSESSORS.

BIRDSONG, Judge.

This is a consolidation of three separate appeals from orders of the superior court dealing with the taxability of certain property located within the Hartsfield Atlanta International Airport complex ("Hartsfield"). We will treat each appeal in separate divisions of this opinion.

1. Case no. 64736 is an appeal by the Clayton County Board of Tax Assessors ("County") from the superior court's order adjudging nontaxable the interest of Dobbs-Paschal Midfield Corporation ("Dobbs") in the central commissary facilities at Hartsfield leased from the City of Atlanta ("City"). The court, after trial without a jury, concluded that the interest of Dobbs in the subject property is "merely a nontaxable usufruct in, or license to use, the commissary building and this interest is not subject to ad valorem taxes by Clayton County. The restrictions imposed by the lease agreement and concession agreement upon Dobbs's use and occupancy of the commissary are inconsistent with a taxable estate for years." The County recites three enumerations of error, challenging each conclusion of law reached by the trial court. However, both parties agree in their briefs that this appeal presents only one issue: whether the interest of Dobbs in the subject property constitutes an estate for years or merely a usufruct or lesser interest.

The following constitutes the findings of fact by the trial court and are not challenged by the County: (1) the subject property is located in the County and is known as the Commissary Building; (2)

the City owns and has title to the Commissary Building and the land on which it stands; (3) Dobbs entered into a concession agreement with the City whereby the City granted Dobbs the right and obligation to occupy and use concession space at Hartsfield to construct or purchase all necessary improvements and to finish, equip, operate, and maintain such premises to provide the inside concessions to the Hartsfield terminal; (4) pursuant to such agreement, Dobbs, as principal concessionaire, is required to provide a warehouse facility to serve as a central receiving point and a delivery system for the deliveries of all supplies, etc., used or sold in the inside concession at Hartsfield; (5) Dobbs leased from the City the subject property on which the commissary building now stands; (6) pursuant to the lease agreement, Dobbs constructed the commissary building pursuant to plans, designs, and specifications approved by the City and the Commissioner of Aviation; (7) the City has reimbursed Dobbs for all costs in the construction of the building; (8) the commissary building, which is a warehouse, office, and commissary, may be used by Dobbs, pursuant to the lease, only as a commissary in connection with its business as principal concessionaire at Hartsfield; (9) the subject lease incorporates and relies upon the concession agreement; (10) the lease and concession agreement give the City the right to future and continuous approval, inspection and supervision of Dobbs' operation of the commissary, and both documents contain numerous specific restrictions relating, without limitation, to external and internal improvements and structural changes, garbage disposal, movement of goods and personnel, advertising, security, and the ability of Dobbs to alienate or mortgage its interest in and obligations under the lease; (11) because of these restrictions, the operation and use of the commissary by Dobbs is specifically, narrowly, and strictly limited; (12) Dobbs performs several public functions for the City in connection with the operation of the commissary; (13) Dobbs makes no profit on the commissary operation; and (14) the stated lease term is fifteen years, but the City has an absolute right to terminate the concession agreement after seven years.

Additional facts adduced at trial show that Dobbs is responsible under the lease for payment of utilities and insurance. The lease also provides that Dobbs is liable for "any taxes and any assessment legally levied or assessed . . . on the leasehold interest of [Dobbs]" or on any improvements thereon.

It is well settled that "[a]n estate for years is a taxable estate. [Cit.] On the other hand, a mere usufruct, sometimes referred to as a [mere] license to use, is not a taxable estate." *Camp v. Delta Air Lines,* 232 Ga. 37, 39 (205 SE2d 194). Although there is a presumption

that an estate for years exists where the term of a lease exceeds five years, the presumption may be overcome by the facts surrounding the lease. *Camp,* supra. "The [lease] contract must, therefore, be construed to determine the intention of the parties." *Henson v. Airways Service,* 220 Ga. 44, 49 (136 SE2d 747).

"An estate for years is one which is limited in its duration to a period fixed or which may be made fixed and certain. If it is lands, it passes as realty. It may be for any number of years, provided the limitation is within the rule against perpetuities." Code Ann. § 85-801. A usufruct is distinguishable from an estate for years. "When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he may not convey except by the landlord's consent and which is not subject to levy and sale. . . ." Code Ann. § 61-101.

We have examined the provisions of and evidence concerning the lease in question and conclude that the trial court was correct in determining that the lease conveyed a usufruct only and did not convey an estate for years. The lease clearly conveyed "only a circumscribed and limited 'use of the premises and facilities' characteristic of a usufruct." *Camp,* supra, p. 40. The lease in this case is analogous to the lease addressed in *Camp,* supra. "[Dobbs] subletting and assignment rights are restricted in a manner inconsistent with an estate for years which normally can be alienated without the grantor's consent. [Dobbs] is required by the agreement to secure the city's approval before making improvements to the rented space and it may not erect signs or other advertising without city approval." *Camp,* supra, p. 41. This conclusion is supported by the holdings in both *Henson,* supra, and *Southern Airways Co. v. DeKalb County,* 216 Ga. 358, 365 (116 SE2d 602). The crux of these decisions was the fact that each lease "granted a limited and restricted use of the premises . . . to furnish such 'facilities and services' customarily furnished at similar airport terminals." *Henson,* supra, p. 50. The lessees did "not have 'an estate for years, carry[ing] with it the right to use in as absolute a manner as a greater estate.' " *Camp,* supra, p. 41. "[T]he restrictions imposed upon [Dobbs'] use of the premises . . . the lease are so pervasive as to be fundamentally inconsistent with the concept of an estate for years." *Allright Parking v. Joint City-County Bd. of Tax Assessors,* 244 Ga. 378, 387 (260 SE2d 315).

The present case is unlike *Buoy v. Chatham County Bd. of Tax Assessors,* 142 Ga. App. 172 (235 SE2d 556). In reaching the

conclusion that the lease in that case conveyed an estate for years, the court stated: "Reading the lease in its entirety, there was a clear intent to grant to the appellants the right to build and operate a motel on the lessor's lands and the latter did not purport to exercise any dominion or control over the operation of the motel. This lack of dominion or control is what distinguishes this case from *[Southern Airways,* supra, *Henson,* supra, and *Camp,* supra]." *Buoy,* supra, p. 173.

Since the lease under consideration conveyed to Dobbs a mere usufruct, its interest is not taxable. *Whitehead v. Kennedy,* 206 Ga. 760 (58 SE2d 832). Consequently, the trial court correctly reversed the decision of the Board of Equalization and determined that Dobbs' interest is not taxable.

2. Case no. 64735 involves the County's appeal from an order of the trial court holding that the City's interest in the property described in Division 1 of this opinion is not taxable.

Code Ann. § 2-4604 (Constitution, Art. VII, Sec. I, Par. IV) provides that the "General Assembly may, by law, exempt from taxation all public property. . . ." Code Ann. § 91A-1102 provides, in part, that "all public property" is exempt from ad valorem property taxes but that "[n]o public real property which is owned by a political subdivision of this State and which is situated outside the territorial limits of the political subdivision shall be exempt from ad valorem taxation unless the property is: (i) Developed by grading or other improvements to the extent of at least 25 per cent. of the total land area and facilities are located on the property which are actively used for a public or governmental purpose; [or] (ii) 300 acres of [sic] less in area. . . ." The property in question is a 9.5 acre portion of the 3,700 acre Hartsfield property. Since the parcel under consideration is a part of a larger tract in excess of 300 acres, the City must show that the land qualifies under Code Ann. § 91A-1102 (a) (1) (B) (i) if it is to be exempt from taxation. *City of Atlanta v. Spence,* 242 Ga. 194 (5) (249 SE2d 554).

Code Ann. § 11-201 provides that "[m]unicipalities, counties, and other political subdivisions are hereby authorized . . . to acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate . . . airports and landing fields for the use of aircraft. . . ." Code Ann. § 11-202 provides that "[a]ny lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201, shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes." The trial court found as facts that the Dobbs' parcels are owned by and located outside the

city and improved to the extent of at least 25 percent of the total land. Consequently, the sole matter for consideration on this appeal is whether the Dobbs' parcels are owned by the city for airport, and therefore public, purposes within the meaning of Code Ann. §§ 11-201 and 11-202. The trial court concluded that the property is public property since it was being used for airport purposes and reversed the assessment of the Board of Equalization. We agree and affirm the trial court's order in case no. 64735.

The purpose and use of the subject property is described in Division 1 of this opinion and will not be reiterated here. The County does not argue that the mere fact that the property is leased to a private corporation removes the "public purpose" nature of the property, as this position would be clearly untenable in light of Code Ann. § 11-205 (c). See *Southern Airways Co. v. DeKalb County*, 102 Ga. App. 850, 853 (118 SE2d 234). Rather, the county argues in its brief that the property is not, in fact, used for public or governmental purposes because "Chapter 11-2 applies only to airports and landing fields for the use of aircraft and does not include those facilities not open to the public and which are not essential to the operation of the airport and landing fields."

We believe the County's argument ignores the realities of the functions of modern air facilities and interprets Code Ann. § 11-201 et seq. too narrowly. Hartsfield is a massive air transportation facility designed to assist the movement of many millions of air passengers per year. As with any modern airport in a large, urban setting, it is far removed in concept and purpose from the small airstrip used to accommodate only a few airplanes each day. The "essential nature of the use" test urged by the County would make virtually all property at any airport, with the exception of the landing fields and control tower, "nonessential" for the operation of the airport and, therefore, non-public in its use.

We hold that the language of Code Ann. § 11-201, *"airports* and landing fields" (emphasis supplied) encompasses all property reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility. Our interpretation of the phrase "public purpose" as used in Code Ann. § 11-201 et seq. is analogous to the use of the same phrase in another context: "Property used for the purpose of public convenience and welfare in the matters of public travel and transportation and to facilitate public transportation and as a dock or port operation, to provide buildings which the users of the port may lease, and in which to store and process commodities transported by water, is in the aid of commerce, and is for the promotion of public transportation, public commerce, and general welfare, and may

properly be classified as public property and therefore exempt from taxation." *Sigman v. Brunswick Port Authority,* 214 Ga. 332, 335-336 (104 SE2d 467).

Although neither this court nor the parties have located any authority on point, it is apparent that the function and use of the Dobbs' property falls within the scope of use reasonably incident to the ownership, control, improvement, and operation of the airport. In *City of Atlanta v. Airways Parking Co.,* 225 Ga. 173, 174, 178 (167 SE2d 145), "the operation of open lot public parking at the Atlanta Municipal Airport" was considered public or "airport use" of the property. In *Henson v. Airways Service,* supra, pp. 44, 50, the operation of a "complete gasoline service station and auto service and repair shop" was considered the furnishing of "such 'facilities and services' customarily furnished at similar airport terminals." The operation of a central food and beverage commissary to furnish concessionaires open to the public within the Hartsfield complex is no less "public" than the services addressed in *Airways Parking,* supra, and *Henson,* supra. The trial court correctly concluded that the Dobbs' property is being used for airport purposes and is, therefore, exempt from taxation.

3. The final appeal, case no. 64861, is brought by the City and challenges that portion of the trial court's order concluding that certain Hartsfield property leased by the Marriott Corporation ("Marriott") from the City is not in active use for airport purposes and is, therefore, taxable.

The property involved in this appeal consists of 7.994 acres within the Hartsfield complex and is owned by the City and leased to Marriott. The property is leased by Marriott incident to the operation of its inflight food and beverage catering service. The lease provides that the premises may be used only for such uses "incidental to the operation of an inflight food and beverage catering facility, or such other uses and purposes which shall not violate any law . . . subject only to the restrictions and limitations as hereinafter set forth, provided that such premises shall not be used for acquisition, construction, installation and/or operation of any facility other than a facility which is (a) directly related and essential to provision of food and beverage catering services to, or (b) functionally related and subordinate to the Airport." Marriott may sublease or license its interest to any third party without City approval provided the sublessee or licensee is obligated to use the premises under the same limitations as those imposed on Marriott. The City exercises no control over the carriers with whom Marriott contracts to provide inflight food and beverage service.

The trial court found that the Marriott "property is being used

for the provision of inflight meals and is not in active use for airport purposes, rather it is rendering a service to the airlines themselves. Providing meals to the airlines to be used in flight is not a part of airport operation, the airline could contract with someone else to provide them meals." Consequently, the court found that the Marriott property is subject to taxation by the County, and that the City is liable for the taxes.

We agree with the trial court's decision, but for different reasons. The trial court appeared to base its decision on the premise that the operation of an inflight meal service is less necessary to the operation of Hartsfield than the operation of a central commissary to serve food and beverage concessionaires located in the airport terminal. We perceive this to be a distinction without a difference, since the former appears as reasonably necessary as the latter to the effective operation of a large, international airport. Further, just as the airlines can "contract with someone else to provide [inflight] meals" so can passengers eat and drink at establishments outside the airport premises. In Division 2 of this opinion, we rejected the "essential nature of the use" test in determining the taxability of such property. The service of providing inflight meals may be as reasonably necessary to the effective facilitation of airport operations, within the context of the airport under consideration, as is the operation of a commissary to serve terminal concessionaires.

However, we do not agree with the City in its argument that the inquiry should end here. Code Ann. § 11-205 (c) provides that governmental entities which may establish airports may also "lease such airports or landing fields to private parties for operation or to lease or assign to private parties for operation, space, area, improvements, and equipment on such airports or landing fields: *Provided in each case that in so doing the public is not deprived of its rightful, equal, and uniform use thereof.*" (Emphasis supplied.) Under its lease, Marriott is not required to contract with any airline to provide inflight food and beverage service; it may contract with any airline it so chooses. It is not, in fact, obligated to use the premises solely for incidental food and beverage service as long as the actual use is lawful and "functionally related and subordinate to the Airport." Consequently, the public's "rightful, equal and uniform use" of the Marriott property has not been preserved by the lease on that property, and the lease is not exempted by the authority of Code Ann. §§ 11-205 and 11-201. Thus, the Marriott property is not being leased for a public purpose pursuant to Code Ann. § 11-202.

The manner in which the Marriott property is required to be used under its lease must be distinguished from the use of the Dobbs' property. Dobbs is required to act as a commissary for *all* con-

cessionaires located at Hartsfield. The concessionaires in turn sell food and beverages to the general public. Dobbs cannot select at will the business with whom the commissary does business. We believe this is a major distinction that preserves the public's "rightful, equal, and uniform use" of the Dobbs' property that is missing in the Marriott lease.

Since the parcel in question is part of a larger tract in excess of 300 acres, the only exception contained in Code Ann. § 91A-1102 that would apply to the Marriott property is that contained in subsection (a) (1) (B) (i), which exempts developed property actively used for a public or governmental purpose. *Spence,* supra. We have concluded that the subject property is not being used for a public or governmental purpose pursuant to Code Ann. § 11-202, and we find no other basis to support the City's public purpose argument. Accordingly, the property is subject to ad valorem property taxes pursuant to Code Ann. § 91A-1102 (a) (1) (B). The trial court properly upheld the assessment of the Board of Equalization.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED DECEMBER 1, 1982 —
REHEARING DENIED DECEMBER 17, 1982.

*C. Crandle Bray, Donald M. Comer,* for Clayton County Bd. of Tax Assessors.

*Marva Jones Brooks, J. M. Harris, Jr., David D. Blum,* for City of Atlanta.

*Thomas C. Harney, Deborrah A. Sutter,* for Dobbs-Paschal Midfield Corp.