A04A0925. CITY OF ATLANTA v. CLAYTON COUNTY BOARD OF TAX ASSESSORS.
(608 SE2d 710)

MIKELL, Judge.

The City of Atlanta ("the City") appeals from an order of the superior court ruling that it must pay ad valorem taxes to Clayton County ("the County") for property it leased to the United States Postal Service at Hartsfield-Jackson International Airport. The City asserts the trial court misinterpreted the applicable statutes and failed to consider a contract between the City and the County in which

the City agreed to pay money to the County as property tax substitution. For the reasons set forth below, we affirm.

1. As the parcel at issue is located outside the territorial limits of the City, OCGA § 48-5-41 (a) (1) (B) (i) governs whether the City must pay taxes. This Code section provides that, in general, all public property is exempt from ad valorem property taxes. OCGA § 48-5-41 (a) (1) (A). However, public property located outside a political subdivision's territorial limits is *not* exempt from taxation *unless* it has been "[d]eveloped by grading or other improvements to the extent of at least 25 percent of the total land area *and* facilities are located on the property *which are actively used for a public or governmental purpose.*" (Emphasis supplied.) OCGA § 48-5-41 (a) (1) (B) (i).

As the parties agree that the parcel at issue was 25 percent developed, we must only consider whether the parcel was "actively used for a public or governmental purpose." OCGA § 48-5-41 (a) (1) (B) (i). The General Assembly provided us with guidance on this issue in OCGA § 6-3-21, which provides:

> Any lands acquired, owned, leased, controlled, or occupied by counties, municipalities, or other political subdivisions *for the purpose or purposes enumerated in Code Section 6-3-20* shall be and are declared to be . . . for public, governmental, and municipal purposes; provided, however, that with respect to facilities located on such lands, which lands are located outside of the territorial limits of the political subdivision that leases such lands and which are leased to . . . private parties, the interests created in such private parties, for the purpose of ad valorem taxation only, are declared not to be used for public, governmental, or municipal purposes and said resulting interests . . . are subject to ad valorem taxation; *provided, further, that the underlying fee interest in such property which remains vested in the county, municipality, or other political subdivision shall be deemed to be used for public, governmental, and municipal purposes.*

(Emphasis supplied.)

According to the dissent, we should examine only the last emphasized clause and conclude that the parcel was exempt from taxation. This we cannot do because the reference to "such property" in this clause is clearly and unambiguously subject to the requirement at the beginning of this Code section that the lands be "acquired, owned, leased, controlled, or occupied by counties, municipalities, or other political subdivisions *for the purpose or purposes enumerated in Code Section 6-3-20.*"

> Where a statute is susceptible of one and only one construction, this court can not adopt a different construction merely to relieve [the] parties of some real or imagined hardship; but if the law is valid, we can only apply it in the form into which it was finally adopted as a statute by the lawmaking body.

(Citation and punctuation omitted.) *State Revenue Comm. v. Nat. Biscuit Co.*, 179 Ga. 90, 100 (175 SE 368) (1934). A court cannot by construction "add to, take from, or vary the meaning of unambiguous words in a statute." *Brooks v. Brooks*, 185 Ga. 549, 554 (195 SE 869) (1938). Moreover, even if we were to construe any alleged ambiguity in the statute, we would be required to apply the rule "that all tax exemptions are to be strictly construed since taxation is the rule and exemption is the exception." *Leggett v. Macon Baptist Assn.*, 232 Ga. 27, 28 (205 SE2d 197) (1974).

Because we find that the statute is plain and unambiguous, we must examine the following language of OCGA § 6-3-20 (a):

> Counties, municipalities, and other political subdivisions are authorized, separately or jointly, to acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate, and police *airports and landing fields for the use of aircraft*, either within or without the geographical limits of such counties, municipalities, and other political subdivisions, and may use for such purpose or purposes any available property that is owned or controlled by such counties, municipalities, or other political subdivisions.

(Emphasis supplied.) Thus, resolution of this case turns on whether the City acquired, leased, or owned the parcel for the purpose of "airports and landing fields for the use of aircraft."[1] In *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864 (298 SE2d 544) (1982), we determined that this language "encompasses all property reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility." Id. at 868 (2).

In this case, the trial court properly concluded that the parcel at issue does not fall within the scope of the definition outlined in

---

[1] We find no merit in the City's argument that we should look to the definition of airport in OCGA § 6-3-20.1 because that definition is limited to that particular section governing foreign ownership or control of airports.

*Clayton County*, supra. The record shows that on January 1, 2001, the parcel was used by the Postal Service as a mail sorting and transfer facility.[2] As an annex to a newer mail facility also located at the airport and built in 1998, it was referred to as the "old postal facility."[3] In 2000, the City had begun negotiating with the Postal Service to buy out the remaining term of its lease on the annex. In October 2002, the Postal Service agreed to allow the City to buy its lease. The City took possession in late 2002 and demolished the annex in 2003.

We find that while it was economical and convenient for the Postal Service to have an onsite annex to its newer facility, the Postal Service's use of the annex did not "facilitate the effective operation of the airport." Instead, it facilitated the effective operation of the Postal Service. Moreover, the City's subsequent purchase of the Postal Service's lease and demolition of the annex demonstrates that the annex did not facilitate the effective operation of the airport. The trial court did not err by concluding the City was not entitled to the exemption embodied in OCGA § 48-5-41 (a) (1) (B) (i).

The dissent asserts that we should not engage in this analysis because the General Assembly amended OCGA § 6-3-21 to include the last clause about a public purpose presumption after we issued our opinion in *Clayton County*, supra, and in answer to it. See *Roberts v. Eastern Air Lines*, 257 Ga. 273, 275 (357 SE2d 585) (1987). While this is true, the amendment does not do what the dissent suggests. Instead, "[t]he Act as amended simply says that any interest that is created in private parties on lands located outside of the territorial limits of the political subdivision granting the interest is subject to ad valorem tax." Id. Thus, the amendment was an answer to Division 1 of *Clayton County*, supra, in which we held that a private party with a usufruct interest, as opposed to a lease for years, could not be taxed. Id. at 864, 865-867 (1).

In Division 2 of *Clayton County*, we interpreted the requirement in OCGA § 6-3-21 that the lands be leased "for the purpose or purposes enumerated in Code Section 6-3-20." Based on our interpretation, we found that the City's parcel at issue was used for this purpose and exempt from taxation. Thus, at the time the General Assembly amended OCGA § 6-3-21, it was aware of our interpretation of the language "for the purpose or purposes enumerated in Code Section 6-3-20" and did not alter it. As a result, it is not reasonable to

---

[2] The tax year at issue is 2002. The record is unclear as to the precise use on January 1, 2002.

[3] We do not address whether the City should pay ad valorem taxes for any fee interest it holds on the parcel where the new mail facility is located.

conclude that this portion of our opinion in *Clayton County*, supra, has been legislatively overruled.

2. In its remaining enumeration of error, the City contends that the trial court erred by failing to consider an agreement for the payment of "property tax substitution" between the City and the County. It cites a March 16, 2000 Intergovernmental Agreement between the City and the County in support of this enumeration. However, it fails to elaborate how this contract impacts the taxation of the particular parcel at issue in this appeal. The agreement required the City to pay money to the County to compensate it for lost tax revenues as a result of the airport expansion project. However, the City's first lease with the United States Postal Service for the parcel at issue began in 1979. Thus, this parcel could not have been subject to a later agreement on compensation for lost tax income as a result of an airport expansion in 2000.

As the City failed to demonstrate how the 2000 agreement impacts the parcel at issue here, we find no merit in this enumeration.

*Judgment affirmed. Andrews, P. J., Blackburn, P. J., Ruffin, P. J., Eldridge and Adams, JJ., concur. Barnes, J., dissents.*

BARNES, Judge, dissenting.

Because the statement in OCGA § 6-3-21 "that the underlying fee interest in such property which remains vested in the county, municipality, or other political subdivision *shall be deemed to be used for public, governmental, and municipal purposes*" controls the disposition of this appeal, I must respectfully dissent. In my opinion this language obviates the need to further analyze whether the City's land was held for public purposes as was done in *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864 (298 SE2d 544) (1982) ("*Clayton County*").

Our Supreme Court made clear in *Roberts v. Eastern Air Lines*, 257 Ga. 273, 275 (357 SE2d 585) (1987), that the 1983 amendment to OCGA § 6-3-21 was a response to *Clayton County*. The amendment, in addition to making certain that private leaseholds are taxable by the host government, also added the language emphasized above. Thus, the statement "shall be deemed to be used for public, governmental, and municipal purposes" constitutes a legislative determination that the underlying fee interest is for public purposes in all circumstances.

In 1982 when this court decided *Clayton County*, the Code section that is now codified at OCGA § 6-3-21 merely stated that "[a]ny lands acquired, owned, leased, controlled, or occupied by counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in Code Section 6-3-20 shall be and are declared to be acquired, owned, leased, controlled, or occupied for

public, governmental, and municipal purposes." Then, in 1983, this Code section was amended to add

> provided, however, that with respect to facilities located on such lands, which are leased to, controlled, or occupied by private parties, the interests created in such private parties, for the purpose of ad valorem taxation only, are declared not to be used for public, governmental, or municipal purposes and said resulting interests, regardless of the extent of such interest, whether possessory or an estate in land, are subject to ad valorem taxation; provided, further, that the underlying fee interest in such property which remains vested in the county, municipality, or other political subdivision shall be deemed to be used for public, governmental, and municipal purposes.

Ga. L. 1983, p. 647. This amendment accomplished two things: First, it made all leases to private parties subject to taxation,[4] regardless of whether a leasehold or a term of years and whether the leases were for governmental purposes, and, second, it "deemed" all remaining vested underlying governmental interests to be used for "public, governmental, and municipal purposes." Therefore, the host government would be authorized to tax all private leases, but could not tax the other government's remaining interest. This interpretation is reinforced by the 1985 amendment to OCGA § 6-3-21 which added the statement "which lands are located outside of the territorial limits of the political subdivision that leases such lands" and also added the last sentence to what currently comprises the Code section:

> The municipality's interest in lands and the facilities located thereon located inside the territorial limits of a municipality which are owned by that municipality for the purposes enumerated in Code Section 6-3-20, are declared to be used for public, governmental, or municipal purposes and are not subject to ad valorem taxation.

Ga. L. 1985, p. 1649, § 1. The preamble to this law states that the Code section was amended to "provide that lands owned by a municipality for purposes of Code Section 6-3-20, which lands are located inside the territorial limits of the municipality, when leased to private parties are declared to be used for public purposes. . . ." With this

---

[4] The preamble to Ga. L. 1983, p. 647, states that the amendment was "to provide that lands leased by counties, municipalities, or other political subdivisions to private parties are declared not to be leased for public purposes. . . ."

amendment, the General Assembly treated all private airport leases and remaining governmental fee interests in the same manner.

In construing the present OCGA § 6-3-21 we are obliged to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). In my opinion, the remedy the General Assembly chose to respond to *Clayton County* was twofold: tax the private leaseholders' interests regardless of the nature of the interest and purpose of the lease, and relieve the government entity from all taxation by the host government. The second division of *Clayton County* clearly considered whether the City's interest in the property could be taxed, and the General Assembly responded by rejecting such an analysis in favor of a broad policy of not taxing the remaining governmental interest in the land. Further, even though all the amendments and current Code section contain the reference to OCGA § 6-3-20, this reference is intended to differentiate lands acquired for airports from lands acquired for other purposes and not to mean that the leases should be examined to ascertain whether they were for a governmental or public purpose. Regardless of the means to which any particular parcel of Hartsfield-Jackson International Airport might be employed, one cannot conclude reasonably that the land was not acquired and is currently used for anything other than an airport.

Under these circumstances, I cannot agree with the majority's determination that the City of Atlanta's remaining interest was subject to taxation by Clayton County. Therefore, I must respectfully dissent.

DECIDED DECEMBER 1, 2004 —
RECONSIDERATION DENIED DECEMBER 16, 2004 —

*Smith, Gambrell & Russell, Edward K. Smith*, for appellant.
*Hancock & Palmer, Jack R. Hancock, Brian R. Dempsey*, for appellee.