## A06A2192. CITY OF ATLANTA v. CLAYTON COUNTY BOARD OF TAX ASSESSORS.

### (645 SE2d 42)

ADAMS, Judge.

The City of Atlanta ("city") appeals the trial court's grant of summary judgment in favor of the Clayton County Board of Tax Assessors, holding that certain property owned by the city in conjunction with the Hartsfield-Jackson International Airport was not exempt from the county's ad valorem property tax in 2003.

The property at issue is a parcel approximately 30 acres in size, lying at the southern corner of the former intersection of Sullivan Road and Interstate Highway 285. The city acquired the land in 1999 in conjunction with a planned fifth runway at the airport. At the time of the purchase, the land fell within the projected runway protection zone[1] for what was then planned as a 6,000-foot runway. The plans for the fifth runway were later expanded and the new plan called for a 9,000-foot runway to run "right through" the parcel at issue.

On January 1, 2003, the date of the tax assessment, the city owned land immediately to the south and east of this parcel. It also owned land on the other side of Interstate Highway 285, to the north and west. And as of that date, the fifth runway had been under construction for over one and one-half years. But prior to that date, the only activity on the parcel at issue had been the removal of some trees to make way for a conveyer belt used to bring dirt to the runway construction site, and on January 1, 2003, no construction activity was taking place on that parcel.

Public property is generally exempt from ad valorem taxation. OCGA § 48-5-41 (a) (1) (A). But property owned by one political subdivision outside its own territorial limits may be subject to taxation, unless it falls within the exemptions set forth in OCGA § 48-5-41 (a) (1) (B). The pertinent exemptions provide

> that "(n)o public real property which is owned by a political subdivision of this state and which is situated outside the territorial limits of the political subdivision shall be exempt from ad valorem taxation unless the property is: (i) Developed by grading or other improvements to the extent of at least 25 percent of the total land area and facilities are

---

[1] A runway protection zone is a trapezoid-shaped area intended to enhance the protection of people and property on the ground. The area is owned or controlled by the airport operator and should be free of any facilities that would encourage people to congregate. See *Ventres v. Goodspeed Airport*, 275 Conn. 105, 119, n. 14 (881 A2d 937) (2005), citing Federal Aviation Administration, Advisory Circular No. 150/5300-113 (September 29, 1989); *Richmond, Fredericksburg & Potomac R. Co. v. Metropolitan Washington Airports Auth.*, 251 Va. 201, 204 (468 SE2d 90) (1996).

located on the property which are actively used for a public or governmental purpose; (or) (ii) Three hundred acres or less in area. . . ."

*City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. 50, 51 (375 SE2d 75) (1988).

The trial court ruled that the property at issue did not fall within these exemptions because (1) "the aggregate total of land owned by the City of Atlanta does not [sic] exceed 300 acres"[2] and (2) on the parcel at issue "there was not sufficient development nor were there any facilities actively used for a public purpose at the time of the tax assessment." Thus, the trial court denied the city's appeal from the county's ad valorem tax assessment.

The city contends that the trial court's ruling was error because the parcel was part of the contiguous land area of the airport owned by the city. And as of January 1, 2003, more than 25 percent of that total land area was developed by grading or other improvements and the land contained facilities actively used for airport operations. In addition, the city and Clayton County had been operating under an intergovernmental agreement, which acknowledged that the city's ownership of property acquired for the fifth runway project would result in a tax loss to Clayton County, and under which the city had been making payments in lieu of taxes. The city views Clayton County's attempt to assess taxes on this property as a breach of that Agreement and an attempt to "double dip" on the tax revenue from that parcel.

Clayton County counters that the property is not tax exempt merely because the city potentially planned to use the property in conjunction with the fifth runway at some point after January 1, 2003. The county asserts that the city should only be entitled to an exemption on property that it is actively using for airport operations. Clayton County also contends that the intergovernmental agreement is irrelevant because (1) the agreement cannot change the parcel's tax status under the law; (2) the Board of Commissioners, who entered into the agreement, did not have the power to bind the Board of Tax Assessors; and (3) the agreement does not purport to make the parcel at issue tax exempt, and even if it did, it does not indicate when such exemption began. Certainly, there was no specific provision stating that the parcel would be exempt from taxes in 2003.

---

[2] There apparently is no dispute that the city's aggregate property in Clayton County exceeded 300 acres. This Court noted in 1988 that the city owned "a total of far more than 300 acres of land in Clayton County" on which it operated the airport. *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. at 51.

1. The initial issue before us, therefore, is whether the tax exemption under OCGA § 48-5-41 (a) (1) (B) required that 25 percent of the particular parcel be developed and contain functioning airport facilities as of January 1, 2003 or whether it is sufficient that 25 percent of the airport property as a whole be developed and contain such facilities. We note that the city bears the burden of establishing that in drafting OCGA § 48-5-41 (a) (1) (B), the legislature clearly intended to exempt the property at issue from taxation:

> The burden of proof in a tax appeal to the superior court is on the party who initiated the appeal. Therefore, in this case the burden was on [the city]. Further, laws granting an exemption from taxation must be construed strictly in favor of the taxing authority, and all doubts must be resolved against the taxpayer. Consequently, no exemption will be allowed unless the exemption is clearly and distinctly intended by the legislature.

(Citations omitted.) *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 791 (1) (498 SE2d 297) (1998). See also *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. 84, 86 (608 SE2d 710) (2004) ("all tax exemptions are to be strictly construed since taxation is the rule and exemption is the exception").

On three previous occasions, this Court has addressed the tax exemptions provided under OCGA § 48-5-41 (a) (1) (B) in relation to the city's Clayton County property.[3] In the most pertinent of those cases, the city contested the county's tax assessment on a vacant strip of land comprising less than 300 acres. It was undisputed that the city's other airport-related holdings exceeded 300 acres. The land at issue had previously been part of a residential neighborhood, and after buying the property, the city removed any dwellings, leaving the land empty. The parcel was separated by Interstate Highway 75 from the other land owned by the city in connection with the airport, and the city acknowledged that the land in question was a discrete tract which bore "no functional relationship to the airport." *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. at 51. A portion of the land was later sold by the city to a private developer. Id.

This Court first addressed whether the tract could be exempt under OCGA § 48-5-41 (a) (1) (B) (ii) because it comprised less than 300 acres. The Court concluded that the total quantity of land owned

---

[3] *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. at 84-88 (1); *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. 50; *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864, 867-869 (2) (298 SE2d 544) (1982).

by the city in Clayton County must be aggregated to determine whether it amounted to 300 acres or less. "It is the total amount of land owned by one political subdivision in the territory of another that determines the tax exempt status of the land." *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. at 52. Accordingly, the land at issue was not tax exempt under subsection (B) (ii) of the exemption.

The Court then analyzed whether the tract could be exempt under subsection (B) (i), requiring that at least 25 percent of the land be developed and that it contain facilities actively used for a public purpose. Citing the principle that exemptions are to be strictly construed in favor of the taxing authority, the Court considered the parcel at issue "separately from the whole" amount of land owned by the city. And because that parcel was not 25 percent developed and did not contain facilities actively used for a public purpose, the Court concluded that the parcel was not tax exempt. *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 189 Ga. App. at 52.

The county argues that this 1988 case established an overarching principle applicable in every case involving a determination of whether the city's Clayton County property qualifies for a tax exemption under OCGA § 48-5-41 (a) (1) (B). Under that principle, a court must consider the total aggregate land held by the city in determining whether the exemption of subsection (B) (ii) applies, but in determining whether the exemption of subsection (B) (i) applies, the court must consider only the parcel the county wishes to tax. Applying such a principle in this case would compel us to conclude that the parcel at issue is subject to the ad valorem tax.

But the city argues that the 1988 case must be distinguished on the ground that the property in that case "had no functional relationship to the airport." In contrast, the property in this case is directly related to the functioning of the airport because it was part of an ongoing expansion of that facility. Thus, the city argues the parcel should be considered a part of all the land held in conjunction with the airport, 25 percent of which is developed and contains facilities actively used for a public purpose. We agree.

We do not accept the county's argument that the 1988 case established an immutable rule applicable to all tax disputes between the county and the city under OCGA § 48-5-41 (a) (1) (B). It was appropriate for the Court to consider the property in that case separately from the remainder of the city's holdings because it was both physically separate from and completely unrelated to the public function of the city's other airport properties. The property before us, in contrast, was purchased as part of a carefully orchestrated, governmentally approved plan to expand the Atlanta airport.

In fact, the county and city entered into an intergovernmental agreement in 2000 to facilitate that expansion project. Under the agreement, the county consented, inter alia, to sell certain public lands to the city and to allow it to condemn other privately held property within county territory. Construction on the project began in April 2001. The FAA approved the revised plan for the extended runway in September 2001. The FAA's written approval document indicates that the fifth runway was needed to reduce substantial delays caused by inadequate airfield capacity and the high volume of traffic at the "busiest airport in the world." The document notes that reduced delay at the Atlanta airport would "result in many benefits to the National Airspace System." The fifth runway has since been completed and currently runs through the parcel.

Under these circumstances, it is apparent that the property in this case cannot be considered in the same manner as the property in the 1988 case. This is more than "[m]ere latent ownership" of land by the city.[4] The property here was purchased as part of a larger acquisition intended to improve the functioning of the existing airport.

Thus, the city acquired and owned the parcel for the statutorily authorized purpose of expanding, improving, maintaining and operating an "airport[ ] and landing fields for the use of aircraft." (Citation, punctuation and emphasis omitted.) *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. at 86. See also OCGA § 6-3-20 (a). This purpose has been defined to "encompass[ ] all property reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility." (Citation and punctuation omitted.) *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. at 86. Property designated for an approved, ongoing airport expansion project is property actively and reasonably used to facilitate the effective operation of the airport. Accordingly, it is appropriate to consider this property in conjunction with the city's other airport-related property in determining whether it was exempt from ad valorem taxation on January 1, 2003. Although exemptions from taxation must be strictly construed, this rule of construction must not be strained or pushed to unreasonableness. *Lamad Ministries v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798, 804 (3) (602 SE2d 845) (2004); *Suttles v. Hill Crest Cemetery*, 87 Ga. App. 343, 346 (73 SE2d 760) (1952). It would be unreasonable to consider property deemed necessary for

---

[4] *Thomas v. Northeast Ga. Council, Boy Scouts of America*, 241 Ga. 291, 293 (244 SE2d 842) (1978) ("Mere latent ownership of property by an institution of public charity will not entitle it to an exemption in the absence of the required application of the property to the charitable goals of the owner.").

increasing the functionality of the airport separate and apart from the airport itself in determining whether it fell under the exemption of OCGA § 48-5-41 (a) (1) (B) (i).

This conclusion is supported by cases interpreting the tax exemption under OCGA § 48-5-41 (c) applicable to places of burial. In *City of Atlanta v. Crest Lawn Mem. Park Corp.*, 218 Ga. 497, 502 (3) (128 SE2d 722) (1962), our Supreme Court determined that an undeveloped portion of cemetery property where no burials had occurred was tax exempt because the undeveloped portion was not "disproportionate to the future [burial] needs" of the affected community. And this Court applied the exemption to undeveloped land owned by a cemetery situated across the road from an area containing existing burial sites. The Court based its decision on the determination that the undeveloped area was dedicated in good faith to future cemetery use and was in proportion to the future burial requirements of the area. *Suttles v. Hill Crest Cemetery*, 87 Ga. App. at 347-348. By analogy, the land at issue here had by 2003 been designated for airport expansion under a plan approved by the FAA, and construction on that expansion had begun. The designation of this land as airport-related property was reasonable and not disproportionate to the future needs of the airport.

Although the particular parcel was vacant and undeveloped, the language of the exemption, as the city notes, contemplates that up to 75 percent of the property held by a political subdivision may be undeveloped and not actively used for a public or governmental purpose, yet still be exempt from ad valorem taxes. Governmental projects are often of such scale that significant time is required to acquire the necessary land and to obtain regulatory approvals. And in the case of an airport runway project, construction could cover a significant stretch of land. As a result, a substantial portion of the land could remain undeveloped even as the construction is proceeding.[5] It appears the legislature contemplated such a situation in drafting the exemption, balancing the realities of such government projects against the potential loss of tax revenue during the process.

"In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry. . . ." (Punctuation and footnote omitted.) *Delta Air Lines v. Clayton County Bd. of Tax Assessors*, 246 Ga. App. 225, 229 (1) (b) (539 SE2d 905)

---

[5] Indeed, if the original plan had remained in effect, the parcel at issue would have been part of the runway protection zone and presumably would have remained undeveloped. Despite this, the property would have played an active role in the proper functioning of the airport.

(2000). Here, it is clear under the plain language of the exemption that not every parcel devoted to a public purpose must be developed in order to qualify for the exemption. If 25 percent of the total land dedicated to a particular purpose is developed and the land contains facilities actively used for that purpose, then the remaining 75 percent is also exempt. Accordingly, we reverse the trial court's grant of the county's motion for summary judgment and remand for entry of summary judgment in favor of the city.

2. Given our holding in Division 1, we need not address the city's argument regarding the parties' intergovernmental agreement.

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 22, 2007 —
RECONSIDERATION DENIED APRIL 11, 2007 —

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., William V. Hearnburg, Jr.*, for appellant.

*Hancock, Dempsey & Everett, Jack R. Hancock, Brian R. Dempsey*, for appellee.