A06A1567. JENKINS et al. v. JENKINS et al.
(637 SE2d 56)

ANDREWS, Presiding Judge.

Sisters Miriam and Sarah Jenkins appeal from the trial court's denial of their motion for judgment notwithstanding the verdict ("j.n.o.v.") following a jury trial. The issue tried by the jury was ownership of bank accounts which had been opened by Frances Jenkins, the deceased mother of Miriam, Sarah, and their six siblings. The accounts were opened jointly with Miriam (Wachovia Bank in Augusta) and Sarah (First State Bank in Wrens) with right of survivorship. Following Frances Jenkins' death, five of the remaining children contended that the accounts were subject to a constructive trust in favor of the estate.[1]

E. A. Jenkins, husband of Frances and father of the eight children, died intestate in 1969, leaving his wife and eight children as heirs to his estate, including extensive real property holdings.[2] Shortly after Mr. Jenkins' death in 1969, Frances Jenkins opened a joint checking account at First State Bank in Wrens with her daughter Sarah, who lived with her parents until their deaths. According to Sarah, the reason her mother put her on that account was so that, if Frances Jenkins became ill or was unavailable, Sarah could pay her bills. Miriam Jenkins also lived with her parents or mother, along with Sarah and Lois Ann, the youngest child, until Lois Ann moved out in 1989, and Miriam moved into her own home in 1994. All three of these daughters worked in Augusta and paid rent to their parents or mother while living with them. Maurice, Miriam's twin brother, also lived with their mother. Maurice ran a store for his mother in Wrens and did handyman work around the house instead of paying rent. Maurice, Miriam, and Sarah provided their mother with transportation and, although Frances Jenkins provided the money, Sarah did the grocery shopping for them. After Lois, Maurice, and Miriam moved out, Sarah was solely responsible for transporting her mother and caring for her mother's needs.

---

[1] Brother Joe Jenkins filed an Application of Beneficiary for Accounting and Other Relief in probate court following probate of Frances Jenkins' will on April 11, 2002 by Miriam Jenkins, executrix. The issue of the joint bank account of Frances and Miriam could not be resolved in probate court and the matter was referred to the superior court by consent. See *Powell v. Thorsen*, 248 Ga. 697, 699 (285 SE2d 699) (1982) (concurrent jurisdiction in superior court over administration of estates where complete and adequate remedies at law unavailable). On November 11, 2003, a complaint against Sarah Jenkins was filed in the superior court by Joe Jenkins, Howard Jenkins, Lois Jenkins, Phillip Jenkins, and Betty Jenkins Brady alleging a constructive trust over the joint First State Bank account of Frances and Sarah. Maurice Jenkins was not a party to this suit. The two cases were combined for trial by jury.

[2] The E. A. Jenkins estate was never formally administered. See generally OCGA Title 53, Chapter 6.

In 1999, condemnation proceedings were begun by DOT on a portion of the real property in the E. A. Jenkins estate, including the family homeplace in which Frances Jenkins lived with Sarah. In December 1999, Frances Jenkins and Sarah moved into Miriam's home and both paid rent to Miriam. Because DOT would only issue one payment to be made electronically, each of the children except Howard and Lois Ann signed quitclaim deeds to Frances Jenkins for their portion of the property taken by condemnation.[3] Howard and Lois each executed a document authorizing DOT to pay in full to Frances Jenkins the price of the condemned property. None of these deeds or affidavits contained any restrictive language on the use to be made by Frances Jenkins of the proceeds from the condemnation. On November 17, 1999, Howard and Joe Jenkins signed a document setting out their agreement that the condemnation proceeds were to be used only to build a house for Frances Jenkins and that, at the time of her death, the house would be deeded to the Jenkins estate and she would agree to give up her interest in the remaining land in the E. A. Jenkins estate. There is nothing to indicate that Frances Jenkins or the remaining siblings ever agreed to these terms. Further, Joe signed his quitclaim deed thereafter on December 8, 1999, and Howard signed his affidavit on December 9, 1999.

By order of February 16, 2001, the superior court found that Frances Jenkins was entitled to all sums held in the registry of the court ($53,550 paid into the registry of the court by DOT) and ordered the funds be disbursed to her. This money was wired by DOT and initially deposited in the joint account of Frances Jenkins and Sarah at First State Bank. Thereafter, however, on February 26, 2001, Toni Lynn Brooks of First State Bank helped Frances Jenkins set up a certificate of deposit and a money market account for these funds. These accounts were set up as joint accounts with right of survivorship in the names of Frances Jenkins and Sarah Jenkins. Brooks was sure that Frances Jenkins requested the certificate and account be set up that way because "when [she] waited on customers, [she] did exactly what they told [her] to do." The certificate of deposit for $30,000 was issued by First State Bank of Wrens in the names of Frances Jenkins and Sarah Jenkins. Although other options including "Joint Account — No Survivorship" were listed, "Joint Account — With Survivorship" was checked and the document was signed by Frances and Sarah. The money market account in the names of Frances Jenkins and Sarah Jenkins was opened with a deposit of

---

[3] In addition to the real property condemned, the estate of E. A. Jenkins included other realty.

$25,279.12. That account was also marked "Joint — With Survivorship" although other options were listed.

Sarah acknowledged that, prior to the receipt of the DOT money, the only money deposited into the joint checking account was money her mother put in it, including the rental paid by Sarah and her sisters. Frances Jenkins' household bills were paid from this account. According to Sarah, the DOT money was to be used to build Frances Jenkins another home, although this did not get done before Frances Jenkins died. Frances Jenkins had wanted to build the house across from the original homeplace on land belonging to the E. A. Jenkins estate, but a dispute arose with Lois Ann, Joe, and Howard, which upset Frances Jenkins. Sarah and her mother had obtained a bid of $165,000 for building a house and had decided to build it near Miriam's home on property not a part of the E. A. Jenkins estate. Sarah was going to make up the difference between the DOT money and the bid, had the house been built. At the time of Frances Jenkins' death, approximately $1,700 remained in the joint checking account opened by Frances Jenkins in 1969.

According to Sarah, her mother was very firm when she made up her mind and no one could tell her what to do about her business. When the account was first set up at First State Bank in 1969, Frances Jenkins did all the talking to bank personnel. Frances Jenkins also made the decision to open up the money market account and to put part of the money in the certificate of deposit in 2001.

Ray Brady of Wachovia Bank, formerly First Union Bank, recalled that, in January 1993, Frances Jenkins, Maurice, and Sarah came to the bank in Wrens. Frances Jenkins opened a brokerage account and did most of the talking regarding it. Frances Jenkins told him she wanted to open the account and wanted Miriam to be on the account with her. Although he did not recall specifically doing it with Frances Jenkins, Brady's usual practice was to explain to the customer that, with right of survivorship, if one of the account holders died, the right to the account would go to the other person on the account. His practice was also to explain that, for convenience, it was not necessary to make the account one with the right of survivorship, because there were other ways to do that. The New Account Application and Customer Agreement also contained numerous choices for the type of account, including "Joint With Right of Survivorship" and "Joint With No Right of Survivorship." Although Miriam was not at the bank, the application was sent to her for her signature and returned to the bank. The money in the Wachovia account originated from Frances Jenkins' mother's estate. Joe acknowledged that Frances Jenkins could do with the money in the Wachovia account whatever she wanted to do with it.

Frances Jenkins died from cancer on November 8, 2001, while living in Miriam's home with her and Sarah. Her will, dated October 21, 2001, left her property to her eight children equally and named Miriam as executrix. Miriam used the joint Wachovia account to pay estate bills for approximately a year following her mother's death. She did so because she thought she would recoup the money when the estate was settled and she did not realize that she was supposed to set up a separate account for the estate. That account contained over $70,000 at the time of trial.

According to Joe, Frances Jenkins had used joint checking accounts to take care of her two brothers when they could no longer manage for themselves. She then used the joint checking accounts to settle up the brothers' estates and she was the heir to both estates.

Frances Jenkins at one point sold timber off the property in E. A. Jenkins' estate and divided the proceeds of the sale between herself and all eight children.

1. Although the first two enumerations of error are that the jury failed to follow instructions regarding constructive trusts and joint accounts, we consider these together with the third and fourth enumerations of error which address the trial court's denial of the motions for directed verdict and j.n.o.v.,[4] there being no other legal basis upon which to consider the arguments made.

Where a jury returns a verdict, the same must be affirmed on appeal if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict. *Edwards v. Sabat*, 263 Ga. App. 852 (589 SE2d 618) (2003). Furthermore, "[a] directed verdict is authorized only where the evidence, with all reasonable deductions and construed in favor of the nonmovant, demands a particular verdict. OCGA § 9-11-50 (a)." (Punctuation omitted.) *Pryor v. Phillips*, 222 Ga. App. 116 (1) (473 SE2d 535) (1996).

"Where there is any evidence or some evidence to support the non-movant's claims, a jury issue is created and a directed verdict is improper." (Punctuation omitted.) *Pryor v. Phillips*, supra at 116 (1). Moreover,

[t]he standard for granting motions for directed verdict and for j.n.o.v. is the same. They may be granted only when no conflict exists in the evidence and the evidence presented,

---

[4] We note that appellants' brief does not comply with Rule 25 (a) (1) and Rule 25 (c) (3) (i), in that no citations to the record or transcripts have been included.

with all reasonable inferences therefrom, demands a particular verdict. On appeal, the standard of review is "any evidence." This court must therefore view the evidence presented at trial and determine whether some evidence supported the jury's verdict.

*Republic Svcs. of Ga. v. Hoak*, 273 Ga. App. 330, 331 (615 SE2d 175) (2005).

Below and here Sarah and Miriam rely on OCGA § 7-1-813 (a) which provides, in pertinent part, that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, *unless there is clear and convincing evidence of a different intention at the time the account is created.*" (Emphasis supplied.)

(a) With regard to the joint checking account opened by Frances Jenkins with Sarah in 1969, in which there remained $1,700 at the time of trial, Sarah acknowledged that this account was opened for her mother's convenience and there was evidence to support the jury's verdict of a constructive trust regarding this account. *Daniell v. Clein*, 206 Ga. App. 377, 381 (1) (425 SE2d 344) (1992); *Turner v. Mikell*, 195 Ga. App. 766, 767 (2) (395 SE2d 20) (1990); see also *Gray v. Benton*, 280 Ga. App. 339 (634 SE2d 86) (2006); *Hopkins v. Moore*, 207 Ga. App. 383, 386 (4) (427 SE2d 853) (1993).

(b) Next, we must decide whether there was "any evidence" of a constructive trust in favor of the children on the condemned property of the E. A. Jenkins estate deeded to Frances Jenkins by six of them and on the proceeds released in writing by the other two. Absent such a constructive trust, the children had no further claim on the proceeds of the DOT condemnation.

OCGA § 53-12-93 (a) provides: "A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." With regard to interests in real property, a constructive trust generally may not be imposed based solely on a broken verbal promise to hold or transfer the land for the benefit of another. *Mays v. Perry*, 196 Ga. 729 (27 SE2d 698) (1943). To hold otherwise would wholly undermine the Statute of Frauds. Id. A broken verbal promise may be the basis of a constructive trust, however, if it was fraudulently made "with the intention of being broken and for the purpose of thereby obtaining title." Id. at 736. See also *Westbrook v.*

*Westbrook*, 212 Ga. 472 (93 SE2d 683) (1956) (no construc-
tive trust over real property where plaintiff made no allega-
tion that verbal promise was made with intention of later
breaking it).

*Parris v. Leifels*, 280 Ga. 135, 136 (625 SE2d 390) (2006).

Having fully explored the record before us, we find nothing to
indicate that Frances Jenkins made any agreement with her children
regarding the quitclaim deeds or the proceeds of the condemnation.
Whatever may have been the understanding or belief of some of the
children regarding this issue, the documents signed by them are
unequivocal and unrestricted. Therefore, it follows that there can be
no showing that Frances Jenkins made any promise with the intent
not to carry it out so that a constructive trust could be imposed on the
realty or the proceeds from its condemnation. *Parris v. Leifels*, supra;
*Jonas v. Jonas*, 280 Ga. App. 155 (633 SE2d 544) (2006).

Further, there is nothing in the record to indicate that, in 2001,
when Frances Jenkins obtained the certificate of deposit and opened
the money market account at First State Bank in her and Sarah's
names as joint tenants with right of survivorship, she meant to do
anything other than that. Compare *Urban v. Lemley*, 232 Ga. App.
259 (1) (501 SE2d 529) (1998) with *Hopkins v. Moore*, supra at 386 (4).

(c) Also, there appears to be a legal impediment to the claims
being made in this action regarding the proceeds of the condemnation
action. As reflected by a copy of the trial court's order in the condem-
nation action contained in the record before us, a judicial determi-
nation was made there concerning the ownership of those proceeds.
All of the parties involved here acknowledged service of Frances
Jenkins' Motion to Disburse Condemnation Funds and all were
directed to show cause why the DOT monies should not be disbursed
to Frances Jenkins.

In Georgia, the collateral estoppel doctrine

> precludes the re-adjudication of an issue that has previously
> been litigated and adjudicated on the merits in another
> action between the same parties or their privies. Like res
> judicata, collateral estoppel requires the identity of the
> parties or their privies in both actions. However, unlike res
> judicata, collateral estoppel does not require identity of the
> claim — so long as the issue was determined in the previous
> action and there is identity of the parties, that issue may not
> be re-litigated, even as part of a different claim.

*Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*, 273 Ga. 175, 178 (1) (538 SE2d 746) (2000), quoting *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (2) (463 SE2d 5) (1995).

OCGA § 9-12-40, which codified the doctrine of res judicata, provides that, "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."

Having not raised the issue of constructive trust in the condemnation action, the appellees were precluded by collateral estoppel from attempting to do so in a later action. See *Morris v. Ga. Power Co.*, 65 Ga. App. 180, 187-188 (1) (15 SE2d 730) (1941).

2. Regarding the account set up by Frances Jenkins jointly with Miriam in 1993, there is also a lack of any evidence to show that, at the time of setting up that account, the intent of Frances Jenkins was anything other than to set up a joint account with right of survivorship in Miriam.

Appellees' contentions that Miriam forgot about the account and made statements after the death of their mother indicating that the funds in the account belonged to Frances do not change this conclusion. *Urban v. Lemley*, supra at 260 (1); *Buice v. Buice*, 255 Ga. App. 699, 701 (566 SE2d 421) (2002).

*Judgment affirmed in part and reversed in part. Barnes and Bernes, JJ., concur.*

DECIDED SEPTEMBER 13, 2006 —
RECONSIDERATION DENIED OCTOBER 5, 2006 —

*John J. Pilcher II*, for appellants.
*William R. McCracken*, for appellees.