A07A0515, A07A0516, A07A0517, A07A0564. CLAYTON COUNTY BOARD OF TAX ASSESSORS v. CITY OF ATLANTA (four cases).
(648 SE2d 701)

ANDREWS, Presiding Judge.

These four cases involve disputes between the City of Atlanta (the City) and the Clayton County Board of Tax Assessors (the Board) regarding the taxability of real properties located in Clayton County and owned by the City.[1] They have been consolidated for appeal.

In Case Nos. A07A0515 and A07A0564, the Board appeals the trial court's grant of the motion for summary judgment to the City regarding the taxability of the United States Postal Service's (USPS) new Air Mail Facility (AMF) for, respectively, tax years 2004 and 2003. The AMF was built by the USPS on real property at Hartsfield-Jackson International Airport (the "airport") leased from the City. In granting the City summary judgment, the trial court found the property exempt from taxation.

At issue in Case Nos. A07A0516 and A07A0517 is the taxability, respectively, of a Sheraton Hotel and a convention center located on

---

[1] Appeals were brought to the superior court pursuant to OCGA § 48-5-311 (g).

real property owned by the City and located in Clayton County near the airport for tax year 2003. The Board appeals the trial court's grant of summary judgment to the City finding this property also exempt from taxation.

When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

## Case Nos. A07A0515 and A07A0564

The following facts are not disputed. In December 1996, the City entered into a lease agreement with the USPS for the lease of the property upon which the USPS built the new AMF at issue in these two appeals. As stated in the lease,

> USPS is engaged in the business of transporting property and mail by aircraft, and desires to provide a larger mail sorting and distribution facility at the Airport that requires the use of certain facilities and land which the City owns; and . . . *the existing mail facility is small and overburdened by the increased mail volume in the Atlanta Metropolitan Statistical Area.*

(Emphasis supplied.)

The USPS began operations at the new AMF in 1998, and the existing mail facility was used as an annex to that facility for several years.

Clayton County, by letter of January 29, 2001, concluded that the new AMF was exempt from taxation. By letter of March 28, 2003, however, that tax exemption was removed, precipitating this dispute over tax years 2003 and 2004.

Regarding property owned by the City but located outside its territorial limits, OCGA § 48-5-41 (a) (1) (B) (i) determines whether the City must pay taxes. This Code section provides that, in general, all public property is exempt from ad valorem property taxes. OCGA § 48-5-41 (a) (1) (A). Public property located outside a political subdivision's territorial limits, however, is *not* exempt from taxation *unless* it has been "[d]eveloped by grading or other improvements to the extent of at least 25 percent of the total land area *and* facilities are

located on the property *which are actively used for a public or governmental purpose.*" (Emphasis supplied.) OCGA § 48-5-41 (a) (1) (B) (i).

At issue here is the public or governmental purpose provided by OCGA § 6-3-20 (a), which provides that

> [c]ounties, municipalities, and other political subdivisions are authorized, separately or jointly, to acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate, and police *airports and landing fields for the use of aircraft. . . .*

(Emphasis supplied.)

> The burden of proof in a tax appeal to the superior court is on the party who initiated the appeal. Therefore, in this case the burden was on [the City]. Further, laws granting an exemption from taxation must be construed strictly in favor of the taxing authority, and all doubts must be resolved against the taxpayer. Consequently, no exemption will be allowed unless the exemption is clearly and distinctly intended by the legislature.

(Citations omitted.) *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 791 (1) (498 SE2d 297) (1998). See also *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. 84, 86 (608 SE2d 710) (2004) ("all tax exemptions are to be strictly construed since taxation is the rule and exemption is the exception") (punctuation omitted).

1. In its first enumerations of error in these two cases,[2] the Board contends that consideration of whether AMF was reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility is precluded by collateral estoppel based on *City of Atlanta v. Clayton County Bd. of Tax Assessors*, supra.

" 'It is axiomatic that the same issue cannot be relitigated ad infinitum. (Cit.)' [Cit.]" *Johnson v. State*, 272 Ga. App. 294, 296 (6) (612 SE2d 29) (2005).

> [W]here there is identity of parties and subject matter, res judicata bars relitigation of matters that were or could have been litigated in an earlier action. [Cit.] Collateral estoppel,

---

[2] The trial court issued a single order dealing with both tax years, and the enumerations and arguments presented here are identical in each case.

like res judicata, requires identity of parties or privity. However, unlike res judicata, collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action. [Cit.]

*Hardwick v. Williams*, 272 Ga. App. 680, 682 (2) (b) (613 SE2d 215) (2005).

Collateral estoppel is applicable to ad valorem property tax appeals to the superior courts. *Thomas County Bd. of Tax Assessors v. Thomasville Garden Center*, 277 Ga. App. 591, 593 (2) (627 SE2d 192) (2006).

In 2002, the City appealed the Board's determination that the old postal facility at the airport, which was being used as an annex for the AMF, was not exempt from taxation. The superior court order upholding the Board's finding was affirmed by this Court in *City of Atlanta v. Clayton County Bd. of Tax Assessors*, supra. We found that

resolution of this case turns on whether the City acquired, leased, or owned the parcel for the purpose of "airports and landing fields for the use of aircraft." In *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 164 Ga. App. 864 (298 SE2d 544) (1982), we determined that this language *"encompasses all property reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility."* Id. at 868 (2). In this case, the trial court properly concluded that the parcel at issue does not fall within the scope of the definition outlined in *Clayton County*, supra. The record shows that on January 1, 2001, the parcel was used by the Postal Service as a mail sorting and transfer facility. [The tax year at issue is 2002. The record is unclear as to the precise use on January 1, 2002.] As an annex to a newer mail facility also located at the airport and built in 1998, it was referred to as the "old postal facility." [*We do not address whether the City should pay ad valorem taxes for any fee interest it holds on the parcel where the new mail facility is located.*] In 2000, the City had begun negotiating with the Postal Service to buy out the remaining term of its lease on the annex. In October 2002, the Postal Service agreed to allow the City to buy its lease. The City took possession in late 2002 and demolished the annex in 2003. *We find that while it was economical and convenient for the Postal Service to have an onsite annex to its newer facility, the Postal Service's use of the annex did not "facilitate the effective operation of the airport." Instead, it*

*facilitated the effective operation of the Postal Service.* More-over, the City's subsequent purchase of the Postal Service's lease and demolition of the annex demonstrates that the annex did not facilitate the effective operation of the airport. The trial court did not err by concluding the City was not entitled to the exemption embodied in OCGA § 48-5-41 (a) (1) (B) (i).

(Footnote omitted; emphasis supplied.) *City of Atlanta v. Clayton County Bd. of Tax Assessors*, supra, 271 Ga. App. at 86-87.[3]

The order of the superior court, affirmed by this Court, addition-ally stated:

The question to here be resolved is not whether the leasehold interest is or is not taxable, but whether the City of Atlanta's fee ownership interest, which exists separate and apart from the leasehold held by the United States Postal Service, is to be taxed to the City. As to that interest the City is acting **not** in its governmental capacity, *but in its proprietary capacity, or as a regular commercial entity, in that it is leasing a property for the purpose of generating rental revenue for the City.* See *Rabun Gap-Nacoochee School [v. Thomas*, 228 Ga. 231 (184 SE2d 824) (1971)]. With regard to that fact, there is no dispute. And as to the mere fact that a lease to the United States Post Office or any other lessee places the City in the role of market participant[,] there can be no dispute.

(Bold emphasis in original. Italicized emphasis supplied.)

This portion of the order was not the subject of any enumerations of error in the appeal and remains conclusive between the City and the Board as to the capacity of the City in leasing to the USPS. *Jenkins v. Jenkins*, 281 Ga. App. 756, 761 (1) (c) (637 SE2d 56) (2006).

Further, in a separate action seeking refunds of the ad valorem taxes paid by the City on the old postal facility (the annex) for tax years 1998-2001 (the 2004 refund case), the superior court granted summary judgment to the County in its order of October 3, 2005. In this order, the superior court referenced a prior order which had, again, found that the use of the old postal facility was not a public use because the property was ancillary, and not strictly necessary, to the

---

[3] Compare *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 284 Ga. App. 871 (645 SE2d 42) (2007) (Property originally to be used for a runway protection zone but eventually used as part of the airport's fifth runway was exempt because it was purchased for the statutorily authorized purpose of expanding, improving, maintaining and operating an " 'airport( ) and landing fields for the use of aircraft.' "). Id. at 875.

public use of facilitating airport traffic.[4] In that order, the trial court also rejected the City's argument that the fact that the lease was with the USPS, a tax exempt entity, entitled the City to an exemption. See *South Carolina v. Baker*, 485 U. S. 505, 523 (108 SC 1355, 99 LE2d 592) (1988) (A local government may assess taxes against a party doing business with the United States, although not directly against the United States.). No appeal was taken by the City in the 2004 refund case. *Jenkins v. Jenkins*, supra.

The City's motions for summary judgment in the two cases before us were premised on the claim that "[t]he AMF facilitated the effective operation of the Airport; therefore, Atlanta's interest in the property was exempt from taxation under OCGA § 48-5-41 (a) (1) (B) (i)." The Board's motions for summary judgment were premised on collateral estoppel, among other grounds, and requested the trial court take judicial notice of the proceedings in the 2002 appeal and the 2004 refund case.[5]

In the order denying summary judgment to the Board and granting it to the City, the trial court found that "[a]s the facts in the 2004 case [*City of Atlanta v. Clayton County Bd. of Tax Assessors*, supra, 271 Ga. App. 84] are substantially different from the case at bar, the doctrine of collateral estoppel does not apply." The order then emphasizes that the old facility was used as an annex to the AMF while the AMF "is the mail facility responsible for processing the mail transported by commercial aircraft." Also, the order found that, because the City bought out the remaining term of the lease and demolished the annex, this clearly indicated the property did not serve a public or governmental function. Finally, the trial court stated that "[n]otably, the Court [of Appeals] expressly reserved judgment on the issue before this court. Id., footnote 3."

First, we note that the content of footnote 3, set out above, is merely a statement of the obvious.

[T]here is no question that a trial court [or an appellate court] cannot issue advisory opinions. Throughout Article VI of the Georgia Constitution, jurisdictional authority is given over cases. Cases are live disputes, actual controversies. Not even in a declaratory judgment action is the court permitted to render an advisory opinion. The Declaratory Judgment

---

[4] The 2002 and 2005 orders were issued by one superior court judge. The orders at issue in these appeals were issued by another superior court judge.

[5] The orders in the two earlier cases are also contained in the records of Case Nos. A07A0515 and A07A0564.

Act itself makes that plain, by allowing only in cases of actual controversy what otherwise might be considered advisory opinions.

(Citations, punctuation and footnotes omitted.) *In the Interest of I. B.*, 219 Ga. App. 268, 269 (464 SE2d 865) (1995) (physical precedent only); see also *McDowell v. Judges ex Officio*, 235 Ga. 364, 365 (219 SE2d 713) (1975); *Vann v. Billingsley*, 234 Ga. App. 803, 805 (508 SE2d 180) (1998); *Chambers of Ga. v. Dept. of Natural Resources*, 232 Ga. App. 632, 634 (502 SE2d 553) (1998).

Because the tax status of the AMF was not at issue in *City of Atlanta v. Clayton County Bd. of Tax Assessors*, supra, no advisory opinion regarding it was given. This, however, is not dispositive of whether the conclusions in that case regarding the business of the USPS, the location of its facilities on airport property, and whether that location facilitated the effective operation of the air transportation facility precluded reconsideration of that issue by the trial court here.

As stated in the 1996 lease of the land by the City to USPS, the purpose of the AMF was to replace the old postal facility which was small and overburdened by mail volume. The new facility, just as the old one, was for the purpose of sorting and distributing mail to facilitate the business of the USPS, not of the airport.

We agree with the Board that reconsideration of the capacity in which the City entered into the lease and whether the AMF facilitated the effective operation of the airport was precluded by collateral estoppel. *Nally v. Bartow County Grand Jurors*, 280 Ga. 790, 791 (3) (633 SE2d 337) (2006); *Jenkins v. Jenkins*, supra; *Hardwick v. Williams*, supra.

2. Our decision in Division 1 makes unnecessary the consideration of the remaining enumerations of error.

## Case Nos. A07A0516 and A07A0517

With regard to the Georgia International Convention Center (GICC) and the Sheraton Hotel property at issue in these two cases, the following facts are undisputed.

The College Park Business and Industrial Development Authority was created by an amendment to the Georgia Constitution in 1980 to develop and operate certain "projects." Ga. L. 1980, p. 2071 et seq. Included among the projects were:

one or more buildings or structures or property to be used, maintained and operated as a *multi-use coliseum and civic center type facilities* to be used for athletic contests, games,

meetings, trade fairs, expositions, political conventions, agricultural events, theatrical and musical performances and all other public entertainments permitted by law, and the usual facilities related thereto, including, without limitation, refreshment stands and restaurants; *one or more buildings or structures or property useful or necessary in the accommodations of people,* including but without limitation, *any hotel, motel,* motor inn, lodging house, lodge or any combination thereof. . . .

(Emphasis supplied.) Ga. L. 1980, p. 2075.

The amendment also declared that the

Authority is created for a public purpose and will be performing an essential governmental function in the exercise of the powers conferred upon it hereunder in the development and promotion of civic and cultural growth, public welfare, trade, commerce, education, amusement, recreation or to alleviate traffic congestion in the City of College Park and thereby better protect the lives and property of its residents and others using its streets.

Ga. L. 1980, p. 2085.

The Authority developed the GICC and leased it to the City of College Park which operated the convention center and subleased a portion of the property to the Sheraton. Because of the City's plans for expansion of Hartsfield-Jackson Airport, the City needed to obtain certain property within the city limits of College Park and to be able to exercise eminent domain to take property in College Park. Also, the GICC property was located close to the end of the proposed fifth runway. As a result, the Authority, College Park, and the City entered into an Intergovernmental Agreement which provided, among other things, that the City would purchase the GICC property. The City closed on the property on May 20, 2002. Following its purchase of the property, the City continued to lease GICC to College Park for use as a convention center and continued in effect the sublease of a portion of the GICC property to the company operating the Sheraton Hotel immediately adjacent to the GICC property. This property was used by the hotel for ballrooms, meeting rooms, and kitchen space.

College Park paid the City $250,000 per month rental for the GICC property.

In its appeals to the superior court, the City did not argue that the GICC property was exempt because its use facilitates the effective operation of the air transportation facility, but argued that the property was exempt because it was being "actively used for a public

or governmental purpose" pursuant to OCGA § 48-5-41 (a) (1) (B) (i) because it was being used for the purposes described in the Act creating the College Park Business and Industrial Development Authority.

Based on the two provisions of the amendment establishing the Authority set out above, the trial court held that "[t]he amendment expressly authorized the development and operation of the convention center and hotel and unequivocally defined the operation of these facilities as 'an essential governmental function.'" Based on this holding, the trial court granted the City's motion for summary judgment and found the property exempt from taxation.

3. In its first enumerations of error in these two cases,[6] the Board argues that the trial court erred in holding that property owned by a tax-exempt development authority remains exempt when the property is sold to a nonexempt entity, here the City.

As previously noted, laws granting a tax exemption must be construed strictly in favor of the taxing authority and against the taxpayer and no exemption will be allowed unless it is clearly and distinctly intended by the legislature. *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, supra; see also *Murray Bakery Products v. Bd. of Tax Assessors of Richmond County*, 186 Ga. App. 559 (367 SE2d 852) (1988). An exemption from taxation must be created expressly and distinctly and will not arise by implication. *DeKalb County v. City of Decatur*, 247 Ga. 695, 698 (279 SE2d 427) (1981).

While it is correct, as the trial court implicitly assumed, that the operation by the *Authority* of the projects listed in the amendment would, under most circumstances, entitle the *Authority* to a tax exemption,[7] that was not the situation once the City purchased the property.[8]

Also, in certain circumstances, a nonexempt entity may be entitled to a tax exemption when leasing property from a tax-exempt authority which retains ownership of the property. Compare *Hart County Bd. of Tax Assessors v. Dunlop Tire &c. Corp.*, 252 Ga. 479,

---

[6] The trial court issued a single order dealing with both the GICC and the property subleased to the Sheraton, and the enumerations and arguments presented here are identical in each case.

[7] OCGA § 36-62-3; see *J.A.T.T. Title Holding Corp. v. Roberts*, 258 Ga. 519 (1) (371 SE2d 861) (1988). If, however, tax exempt organizations use property to generate a private profit, this property may be taxed. Id. at 520 (4); *Mack v. Big Bethel A. M. E. Church*, 125 Ga. App. 713 (188 SE2d 915) (1972).

[8] We also note, as pointed out by the Board, that the amendment did not create the GICC, but provided for the creation of the Authority which was authorized to exercise certain powers, including the creation of "projects."

480-481 (1) (314 SE2d 188) (1984) with *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279 (2) (282 SE2d 880) (1981).

Here, the Authority entered into an outright sale of the GICC and adjoining property, which it was authorized to do. OCGA § 36-62-6 (a) (7).

Unless the City can justify an exemption based on its own use of the GICC and adjoining property, it is not entitled to piggyback onto the Authority's exemption. In *Coweta County Bd. of Tax Assessors v. EGO Products*, 241 Ga. App. 85, 86 (1) (526 SE2d 133) (1999), the Coweta County Development Authority funded an expansion and modernization of EGO's facility through industrial revenue bonds. Bonds issued and the facility was expanded and modernized. Pursuant to the agreement, EGO deeded its real property and sold its personalty to the Authority, which then leased both back to EGO for the life of the bonds. The Authority also pledged to provide EGO with a 50 percent reduction of its property taxes. The Board allowed the reduction as to the realty,[9] but appealed the first such exemption given by the Board of Equalization to EGO's personal property pursuant to this agreement.

In reversing the superior court's affirmation of the Board of Equalization's allowance of the abatement on personal property, this Court noted that "[a]lthough the authority was exempt from taxes, EGO as 'a business which takes a leasehold from the Authority is subject to ad valorem taxation on the fair market value of the possessory interest held. (Cit.)' *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, [supra]." *Coweta County Bd. of Tax Assessors*, supra, 241 Ga. App. at 86-87.

Further, we found no authority that would empower an authority, acting alone and without notice to the county or the Board, to excuse a taxpayer from paying a portion of its property tax obligation. *Coweta County Bd. of Tax Assessors*, supra, 241 Ga. App. at 89.

Therefore, the trial court erred in concluding that the City was entitled to an exemption on this basis.

4. The Board also enumerates as error the trial court's finding that the City's lease of the property to College Park for the operation of the convention center and the Sheraton hotel was a governmental purpose under OCGA § 48-5-41 (a) (1) (B).

Such a finding was error. There is nothing in the record to indicate that the City entered into the lease of this property to College

---

[9] The Board, for nearly 30 years, had subjected all leasehold interests in realty to a 50 percent abatement, in part, to simplify its own record keeping. *Coweta County Bd. of Tax Assessors*, supra, 241 Ga. App. at 87.

Park in anything other than its proprietary capacity, as it did with the USPS. See Division 1, supra.

Also, the lease was a profit-generating undertaking for the City, as defined in *Rabun Gap-Nacoochee School v. Thomas*, supra at 238. Therefore, the City was not entitled to an exemption on the basis that its use of the property was for a governmental or public purpose. Id.; *Atlanta Artists Center v. Fulton County Bd. of Assessors*, 245 Ga. App. 253, 254 (1) (537 SE2d 701) (2000).

*Judgments reversed in Case Nos. A07A0515, A07A0516, A07A0517 and A07A0564. Ellington and Adams, JJ., concur.*

DECIDED JUNE 27, 2007 — 

*Hancock, Dempsey & Everett, Jack R. Hancock, Brian R. Dempsey,* for appellant.

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., William V. Hearnburg, Jr.,* for appellee.

