A10A0997, A10A0998, A10A0999, A10A1000, A10A1001. CITY OF ATLANTA v. CLAYTON COUNTY BOARD OF TAX ASSESSORS (five cases).

(702 SE2d 704)

MIKELL, Judge.

The City of Atlanta ("the City") appeals from the superior court's order granting summary judgment to the Clayton County Board of Tax Assessors ("the Board") as to the taxability of five parcels of property leased by the City to Delta Air Lines, Inc. ("Delta"), at Hartsfield-Jackson Atlanta International Airport ("the Airport"). The court concluded that the parcels were not exempt from ad valorem taxes for the tax year 2005. We disagree and reverse, consolidating the appeals for disposition in a single opinion.

The salient facts have been stipulated. The Board created the five parcels in 2005. In the ten years prior to 2005, the Board did not assess taxes on the properties that now comprise the parcels. The first parcel,[1] known in the lease as the Delta Technical Operations Center ("DTOC"), contains hangars and maintenance facilities used by Delta to repair and service aircraft, engines, and related equipment. The other four parcels comprise the Central Terminal Support Area ("CTSA") Premises. The second parcel[2] contains a ground support equipment building used to store and maintain tugs and other ground equipment used by Delta to transport baggage and move aircraft. The third parcel[3] houses a cargo handling building that Delta uses to collect, process and distribute cargo carried on Delta aircraft. The fourth and fifth parcels[4] contain buildings that house flight kitchens, one for international flights and one for domestic flights, which Delta subleases to Gate Gourmet, Inc., primarily to provide catering for Delta aircraft.

The Board assessed the parcels and issued the City a tax bill for 2005. The City paid the bill under protest and appealed the assessment to the county board of equalization ("BOE"). The BOE ruled that the parcels were taxable, and the City appealed the BOE's decision to the superior court pursuant to OCGA § 48-5-311. Ruling on cross-motions for summary judgment, the superior court concluded that the City had not met its burden of proving that it was entitled to an exemption[5] under OCGA § 48-5-41 (a) (1) (B) (i). That

---

[1] Case No. A10A0997 concerns parcel no. 13009-010001A.

[2] Case No. A10A0998 concerns parcel no. 13007-007002A.

[3] Case No. A10A0999 concerns parcel no. 13009-023003A.

[4] Case No. A10A1000 concerns parcel no. 13009-023002A, and Case No. A10A1001 concerns parcel no. 13011-022007A.

[5] See *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 286 Ga. App. 193, 195 (648 SE2d 701) (2007) ("The burden of proof in a tax appeal to the superior court is on the party

statute provides:

> No public real property which is owned by a political subdivision of this state and which is situated outside the territorial limits of the political subdivision shall be exempt from ad valorem taxation unless the property is: (i) Developed by grading or other improvements to the extent of at least 25 percent of the total land area and facilities are located on the property which are actively used for a public or governmental purpose[.][6]

All five parcels are located in Clayton County ("the County") and outside the territorial limits of the City. Further, as of January 1, 2005, more than 25 percent of the land area of each parcel was developed by grading or other improvements. Accordingly, the issue is whether the facilities located on the parcels are actively used for a public or governmental purpose. Property is "acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes"[7] if it is used "to acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate, and police airports and landing fields for the use of aircraft."[8] In *Clayton County Bd. of Tax Assessors v. City of Atlanta* (the "1982 case"),[9] we determined that the foregoing language "encompasses all property reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of the air transportation facility."[10] In so holding, we relied in part on an analogous ruling by our Supreme Court in *Sigman v. Brunswick Port Auth.*:[11]

> Property used for the purpose of public convenience and welfare in the matters of public travel and transportation and to facilitate public transportation and as a dock or port operation, to provide buildings which the users of the port may lease, and in which to store and process commodities transported by water, is in the aid of commerce, and is for the promotion of public transportation, public commerce,

---

who initiated the appeal. . . . Further, laws granting an exemption from taxation must be construed strictly in favor of the taxing authority, and all doubts must be resolved against the taxpayer") (citations omitted).

 [6] OCGA § 48-5-41 (a) (1) (B) (i).

 [7] OCGA § 6-3-21.

 [8] OCGA § 6-3-20.

 [9] 164 Ga. App. 864 (298 SE2d 544) (1982).

 [10] Id. at 868 (2). Accord *City of Atlanta v. Clayton County Bd. of Tax Assessors*, 271 Ga. App. 84, 86 (1) (608 SE2d 710) (2004) ("the Postal Service case") (whole court).

 [11] 214 Ga. 332 (104 SE2d 467) (1958).

and general welfare, and may properly be classified as public property and therefore exempt from taxation.[12]

In the case at bar, the superior court ruled that the DTOC, the ground support equipment building, the cargo handling building, and the two flight kitchens were not exempt from ad valorem taxes because they were not "reasonably and uniformly used for the public convenience" to facilitate the effective operation of the Airport. Instead, the court reasoned that the buildings facilitated the effective operation of Delta and Northwest Airlines, Inc. The court concluded that because seven passenger airlines in addition to Delta and Northwest had gate access at the Airport, and Delta and Northwest were the only airlines that leased property from the City for use as a jet base facility, then the services provided by the facility were discriminatorily used exclusively for Delta and not for any other airline for the purpose of Airport operations. The superior court relied in part on the Postal Service case,[13] where we held that property leased by the City to the United States Postal Service at the Airport was not exempt from ad valorem taxes.[14] We reasoned that although "it was economical and convenient for the Postal Service to have an onsite annex . . . , the Postal Service's use of the annex did not 'facilitate the effective operation of the [A]irport.' Instead, it facilitated the effective operation of the Postal Service."[15]

The Postal Service case is distinguishable. The mail sorting and transfer facility at issue there was not used for the purpose of "airports and landing fields for the use of aircraft" as required by OCGA § 6-3-20. By contrast in the case sub judice, the parcels contain hangars and maintenance facilities for servicing aircraft and engines, a ground support equipment building, a building to handle cargo to transport on Delta aircraft, and two flight kitchens. These facilities are used for the purposes required by OCGA § 6-3-20. The superior court thus erred in relying on the Postal Service case as support for its ruling that the parcels were not exempt from ad valorem taxes.

The superior court further concluded that the City's lease with Delta did not preserve the public's "rightful, equal, and uniform use" of the parcels as required by OCGA § 6-3-25 (3).[16] In so holding,

---

[12] Id. at 335-336 (2).

[13] Supra.

[14] Id. at 87 (1).

[15] Id.

[16] OCGA § 6-3-25 (3) pertinently provides that government entities that lease real property for the purpose of airports or landing fields are authorized to: "lease or assign to private parties for operation, space, area, improvements, and equipment on such airports . . . ,

the court relied on the 1982 case,[17] in which we considered separate Airport properties leased by the City to third parties. First, we held that a parcel upon which a third party operated a central food and beverage commissary that supplied provisions to concessionaires who were open to the public at the Airport was "reasonably incident to the ownership, control, improvement, and operation of the [A]irport" and thus exempt from taxation.[18] We also held, however, that a parcel leased by the City to the Marriott Corporation did not preserve the public's "rightful, equal, and uniform use" of the property.[19] Under the lease, Marriott was not required to contract with any particular airline to provide in-flight food and beverage service and was not obligated to use the premises solely for incidental food and beverage service as long as the actual use was lawful and "functionally related and subordinate to the Airport."[20] As such, we held that the property was not exempt from ad valorem taxes. We commented, however, that "[t]he service of providing inflight meals may be as reasonably necessary to the effective facilitation of airport operations, within the context of the [A]irport . . . , as is the operation of a commissary to serve terminal concessionaires."[21]

The City's lease with Marriott in the 1982 case differs significantly from the City's lease with Delta in the instant case. The lease at issue pertinently provides: "The DTOC Premises may be used only for any . . . purposes as are a part of or incident to the operation of the Airport or directly related and essential to servicing of aircraft or enabling aircraft to take off or land in connection with Lessee's air transportation business." "The CTSA Premises shall be used only for such uses and purposes as are part of or incidental to the operation of an air cargo facility, an in-flight food and beverage catering facility, a ground support equipment storage and maintenance facility and other terminal support facilities." Further, the lease limits the food service facility to the purpose of "providing . . . foods, beverages, and sundry items only to Lessee's employees, guests, invitees, and in-flight passengers." An unrebutted affidavit of a Delta executive provides evidence that the flight kitchens are essential to provide food and beverage for Delta's passengers flying out of the Airport. We conclude that the lease preserves the public's "rightful, equal and uniform use" of the parcels.

---

provided in each case that in so doing the public is not deprived of its rightful, equal, and uniform use thereof."

[17] Supra.

[18] Id. at 869 (2).

[19] (Punctuation omitted.) Id. at 870 (3).

[20] (Punctuation omitted.) Id. at 869 (3).

[21] Id. at 870 (3).

The 1982 case, as it relates to Marriott, and the Postal Service case are distinguishable for an additional reason. Unlike Marriott and the Postal Service, Delta is a common carrier. "Status as a common carrier is contingent on the carrier holding itself out to the public and offering its services *indiscriminately* to those interested in its services."[22] As a common carrier, Delta is required to hold itself out to the public as being willing to transport persons or property for compensation.[23] The functions of the parcels as outlined by the lease effectuate that purpose.[24] That other airlines are excluded from using the parcels is not a controlling factor.[25] The facilities operated on the parcels support Delta's operation as a common carrier at the Airport. Delta's services are available to be used equally by all of its customers at the Airport. As such, the public, who may use Delta's services without discrimination, benefits from these facilities.

For these reasons, we conclude that, for the 2005 tax year, the five parcels that are the subjects of this consolidated appeal were "reasonably and uniformly used for the public convenience and welfare to facilitate the effective operation of" the Airport.[26] As such, they are exempt from ad valorem taxation for that year pursuant to OCGA § 48-5-41 (a) (1) (B) (i). The superior court erred in ruling otherwise.

*Judgments reversed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 7, 2010 — 

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr.*, for appellant.

*Freeman, Mathis & Gary, Jack R. Hancock, Brian R. Dempsey*, for appellee.

---

[22] (Citation omitted; emphasis supplied.) *Valdivieso v. Atlas Air*, 305 F3d 1283, 1286 (III) (B) (11th Cir. 2002).

[23] Federal Aviation Administration Advisory Circular No. 120-12A (April 24, 1986); *Woolsey v. Nat. Transp. Safety Bd.*, 993 F2d 516, 522 (II) (5th Cir. 1993).

[24] See *Delta Air Lines v. Coleman*, 219 Ga. 12, 23 (131 SE2d 768) (1963) (Almand, J., dissenting).

> Delta Airlines under a permit or license from the City of Atlanta uses the airport in the operation of its airline service in the transportation of passengers and freight. . . . The maintenance and repair of airplanes is just as essential to operation of an airport as the maintenance of a passenger terminal and runways for the takeoff and landing of planes. . . . [T]he leasehold interest of Delta in public property and its use by Delta is for governmental, public and municipal purposes.

(Citations omitted.)

[25] See the 1982 case, supra at 868 (2) (mere fact that property is leased to a private corporation does not eradicate its "public purpose").

[26] See id.